Court of Appeals for the 11th Circuit is now open according to law. God save the United States and the Senate. Thank you Ms. Goss and good morning to Council. I know your panel wishes we were together in Jacksonville, but that was not meant to be. I always feel like it's a privilege to sit with my colleague, Judge Ravenbaum, and so I'm grateful for that this week. And she and I both are grateful that Judge Pahlman is joining us from the 9th Circuit. He had to get up early in Idaho to be here. I guess it's not early for you, Judge Pahlman, but we really appreciate you being willing to help us with our work and sit with us for all four days this week. It's lovely to be with you. Well, I'm enjoying it very much and thank you for having me. That's right. Before I call the first case, I think because of the kind of unusual circumstances of being on the phone together, we had promised Council the first two minutes of their argument uninterrupted, so we'll try to observe that. And otherwise, I'm going to make my best attempt to enforce time limits. Ms. Gettis helps me a lot because she will give you a two-minute warning, at least on your main argument, and she will let you know when your time has expired. Did I cover everything, Ms. Gettis? Yes, Judge, yes, Judge. Okay. All right. Well, thanks to you, too, for being with us. So I'll call the case of Charles Riddick versus the United States of America and Newland. Good morning, and may it please the Court. Jonathan Parente for the appellant, Charles Riddick. This court should reverse the District Court's dismissal order for two primary reasons. First, the District Court erred by holding that Mr. Riddick's FTCA administrative claim was time-barred based on the date that claim was stamped received by the Bureau of Prisons. Instead, the District Judge should have applied the prison mailbox rule, which judges timeliness based on the date that claim was given to prison staff to be mailed. Second, because Mr. Riddick adequately alleged a Bivens claim for deliberate indifference to his serious medical need. And under well-established 11th Circuit law, Mr. Riddick should have at least been given one opportunity to amend prior to a dismissal with prejudice. As to the FTCA claim, this court should hold that the prison mailbox rule applies to FTCA administrative filings, and in doing so, reverse the District Court's decision that Mr. Riddick's claim was untimely. The date the Bureau of Prisons stamped a claim form received cannot be dispositive. Under the prison mailbox rule, Mr. Riddick's administrative claim should have been presented as of the date he delivered it to prison authority for mailing. And because of the Supreme Court's decision in Houston v. Lack, and this court's decision in Garvey v. Vaughn, we already know how the prison mailbox rule applies to other filings. In the context of court filings, such as a notice of appeal, the filing of a 1983 lawsuit, the filing of post-trial motions, and the filing of an FTCA lawsuit, we know that the prison mailbox rule already applies. And the Supreme Court in Houston was very clear that the prison mailbox rule is a rule born out of fairness. And I'm quoting from the majority opinion here, but Houston tells us that no matter how far in advance the pro se prisoner delivers his notice to the prison authorities, he can never be sure that it will ultimately get stamped filed on time. Just as Brendan went on to say... I'll fix Solomon here. I was looking in the record, and I can't find a date that he alleges he presented the claim to prison staff. And doesn't he have that burden of proof? Your Honor, that is a good question, and I appreciate the question. The record is silent on the exact date that Mr. Riddick gave his administrative claim to staff. But let me tell you why that's not problematic. The record is only silent here because of the stage of the proceeding, for, of course, it's a motion-to-dismiss stage, and Mr. Riddick was never given an opportunity to amend before the court dismissed his claim as untimely, as a matter of law, with prejudice. So Mr. Riddick didn't have a chance to plead and recuse. If you were to amend, what would the date be? I'm sorry, Judge Tolman, could you say that again? If you were to amend, what would the date be that you would process? Your Honor, I don't have the exact date, but I can tell you two things. One, under the prison mailbox rule, it's the government that bears the burden to prove when those papers were delivered to the prison staff. That's very clear from Houston itself. The 11th Circuit reiterated that. In Jeffries v. United States, it's the government's burden, not Mr. Riddick's burden, to show when he handed them those papers to be mailed. And the reason is is because the prison has well-established procedures, records, and laws to provide that evidence. And the government didn't come forward with any of that evidence at the trial court or mention anything on appeal, and we think it's significant that it would be the government's burden to fill in that gap. Second, as it relates to the opportunity to amend, Mr. Riddick didn't have a chance to do that, and so the record is silent on that. What I can say, being very careful to respect attorney-client privilege and without committing to what Mr. Riddick's pleadings and proof would be on remand, we understand, based on our investigation,  more than one time the prison staff. And the first time was while he was still in lockdown and before the September 26, 2015 deadline under the two-year clock. But even if we didn't have that Judge Tolman, if you think about the way this should be implemented at the motion-to-dismiss stage, the district judge holding said that even if we apply 20 days of equitable tolling, this claim would be time-barred. That was the holding as a matter of law. That's the holding before the 11th Circuit today, and we believe it was wrong. Because if you apply 20 days' equitable tolling, Mr. Riddick had until October 28th to hand his paperwork to prison staff. All we know is that those papers were stamped and received on November 3rd. Would that leave us, Judge Tolman, as a situation where there was no basis to grant a Rule 12b6 motion to dismiss? Under this court's decision in LaGrossa v. First Union, the only way you could grant a dismissal as a matter of law at the pleading stage is if it was clear from the state of the pleadings itself that Mr. Riddick's claim was untimely. Here, it's not clear. There needs to be further development on that point. And as it relates to that development, the case law shows us that it was the government's burden to identify that date, not Mr. Riddick's. Counsel, let me just... I tried to schedule it out. The injury occurred on September 26th of 2013, so that would give him two years to 2015, right? Correct. And then the lockdown begins on September 18th of 2015 and ends on October 8th. So, as I understand the district court's math, it added 12 days to the lock... Excuse me, eight days to the lockdown and then eight more. So, that's a total of 16. I'm sorry, 12. Total of 20 days. Is that right? That's how the district court got to 20 days? Your Honor, your dates were all right. I have the same timeline you did. The 20 days of equitable polling, my understanding of that, is it lines up with the same number of days that Mr. Riddick was in lockdown on that last period of lockdown. That's your 20 days. But then he doesn't get the memo from the prison counselor until October 21, which is 13 days later, and then the Bureau of Prisons doesn't receive it until November the 3rd. So, the district court concluded that no matter whether you applied equitable polling or the mailbox rules, it would still be untimely. What's your response to that? Your Honor, when the court said that even if we apply 20 days of equitable polling, the claim would be untimely, that was based on the district judge's reference to the date paperwork was stamped received. November 3rd would have been too late, even if equitable polling of 20 days applied. But that's not necessarily true based on the date that Mr. Riddick had to hand off that paperwork to prison staff in the first place. And we know that based on an assumption of 20 days of equitable polling, the paperwork would have had to been delivered to prison staff by October 28th. And that's where the record is silent at this point, and that's where we believe the government has a burden and an opportunity to amend should have been given to fill in that missing detail. We know that the Prison Mailbox Rule is one born of fairness, and what Houston tells us is that the pro se prisoner has no choice but to entrust forwarding his papers to prison authorities who he can't control and supervise and who may have every incentive to delay. And just like a prisoner filing an FTCA lawsuit in court, Mr. Riddick faced all those same challenges and burdens and potential unfairnesses as a prisoner in filing his FTCA administrative claim. He was forced to trust the vagaries of mail. He had no idea whether the documents would arrive or when they would be stamp received. And that's why the Second Circuit in Tapia Ortiz and the Seventh Circuit in Semsky earlier this year extended the Prison Mailbox Rule to the filing of administrative claims. They clearly have that pro se prisoners face the same obstacles in that context, filing administrative forms, as they do filing court documents. Now, the government has offered three reasons why the FTCA administrative claims need to be treated differently, and with all respect to my opponent, they're wrong on each one of them. Their first argument is that the FTCA should be construed as a limited waiver of sovereign immunity in the context of the FTCA, and that's true. But then they then rely on the Cook decision of the Second Circuit to say that that limited waiver, an implementing statute requiring receipts, must be construed strictly and strictly applied. This court already addressed that issue in Barnett v. Okeechobee Hospital in 2002, and the Eleventh Circuit reached the opposite result of the court in the Second Circuit. And in doing so, Judge Joe Flett specifically noted that it was important to, quote, be careful to observe scrupulously the circumstances and conditions of the sovereign immunity waiver. Their second argument is that... ...that Houston and Garvey were different from this case because they involved undefined terms like filing an appeal or commencing an action, and suffice to say that that's not right either. In Houston, the question was not just what it means for something to be filed, but under Rule 4, we have to look at when something was, quote, filed with the clerk of the district court, and whether that happened within 30 days. It was a defined term. Garvey is the same. The government argues on page 26 that nobody knew what it meant for an action to be commenced. That's not true. Rule 3 of the Federal Civil Procedure says commencement is filing a complaint with the court, and Rule 5 tells us that filing is when a document is filed with the clerk of the court. Those are not undefined terms, and that's not a distinction that matters. I do want to make a brief comment about the Bivens claim. We are happy to rely on our papers in the most part, but the significant issue here is we believe our allegations were sufficient to sound in viable theories of deliberate indifference, the most notable of which is that there's an inference from the plausible allegations that exist that Mr. Newland was not qualified to use that device at all. If he wasn't qualified to use the device, then Mr. Rich did not get an even grossly adequate standard of care, which is more than mere negligence. The reason that matters is because we think we've already pled an adequate theory. But if we haven't, the 11th Circuit case law is well established and very clear that a pro se plaintiff should get at least one chance, at least one, to amend to add facts prior to a dismissal with prejudice. And the government's appellee brief is replete with references to things that they say Mr. Riddick didn't allege in the complaint. They can't complain about things if he didn't allege in the complaint and then say ignorance about how he could honor those problems by amendment. Thank you. Good morning, Your Honors, and may it please the Court. Holly Gershel on behalf of the United States and Dr. Newland. This case is not the right vehicle for this Court to decide if the prison mailbox rule applies to FTCA administrative claims for two reasons. One, Riddick did not raise it below, and two, his claim would be time-barred even if the prison mailbox rule applied. Starting with the first point, Riddick has weighed the issue where at the very least, plain error review applies. And this is true even though he's a pro se litigant. Plain error review is fatal here because there is no case in the Supreme Court or this Court that applies the prison mailbox rule to FTCA administrative claims. In the plain language of the statute and regulation, do not require the application of that rule. To the contrary, they require that the agency receive the claim within two years. But putting aside Riddick's failure to raise the prison mailbox rule below, unlike in Boatman, on which Riddick relies, the face of his complaint makes clear that he did not deliver his Form 95 to the prison officials for mailing until after the limitations period expired. Riddick does not dispute that his claim was due on September 26, 2015. And based on the memorandum that was enclosed with his complaint, he could not have given it to prison officials to mail to at least October 21, 2015. Riddick contends on appeal that he was entitled to equitable tolling because the prison was on lockdown from September 18, 2015 until October 8, 2015. But that argument fails as a matter of law to meet his burden of showing that he pursued his rights diligently and that extraordinary circumstances beyond his control prevented him from presenting a timely complaint. First, as this court has recognized, prison lockdowns generally are not extraordinary circumstances warranting equitable release. Moreover, to justify equitable tolling, Riddick would have had to show that the lockdown persisted throughout the statutory period. But the lockdown lasted only eight days of the two-year period, and he signed his Form 95 months before the statutory period expired. And so, as a matter of law, Riddick is not entitled to equitable tolling. On appeal, Riddick does not argue that a lockdown constitutes an extraordinary circumstance or that he had been reasonably diligent in pursuing his rights. Instead, he argues the district court should decide the equitable tolling issue in the first instance. But the district court would err... Yes, counsel? Sorry for interrupting. This is Robin Rosenbaum. I have some questions concerning, first, the waiver. Isn't it... Isn't the statute of limitations an affirmative defense on the part of the government? And if so, isn't there no obligation on the part of the petitioner to plead it affirmatively in his complaint, but rather he would have to respond to it? He would have to respond... That's correct, Your Honor, that he would have to respond to it, but the United States asserted in its motion to dismiss that it was time-barred, and he never responded and said, oh, but the prison mailbox rule should apply here. Well, let me ask you this. The district court... The district court discussed the prison mailbox rule. You, the government, argued about the prison mailbox rule. How is there any prejudice or harm to our usual rules, which are, you know, the reason that we have... that we require it to be brought up beforehand is because of the fact that we don't want... we don't want appellate courts in the first instance to be considering these things. We don't want people holding back their arguments and trying to take a second bite at the apple. Here, all of those things were accomplished, and he's pro se, and he submitted the letter about October 21st, which to me seems as if we're going to liberally construe his pleadings as we must since he's pro se, that he effectively raised the notion of the prison mailbox rule, though not in those specific terms. Why is that not the case? I'm sorry. I do not recall the district court discussing the prison mailbox rule in his order. My understanding of the order is that he said it's timely when it's received by the agency, and the agency didn't receive it until November 3rd, and that even if he were entitled to equitable tolling, his claim would still have not been timely received. So I do not recall, and I don't believe in our brief below either we brought the prison mailbox rule up. I think the whole discussion of timeliness was based on when it was received. But even if the court wants to address the prison mailbox rule, there's still the problem of equitable tolling, which is that he's just, as a matter of law, not entitled to as much equitable tolling as he needs in order to make this claim timely, even if the prison mailbox rule were to apply. And you might be right. You might be right about that. Ultimately, you might be right. The thing is, we don't know because he did not have an opportunity to amend that was dismissed with prejudice. So why shouldn't he have had an opportunity to amend and at least try to bring it, you know, bring in the necessary allegations? Then at that point, if he couldn't establish what was necessary to demonstrate that he was entitled to equitable tolling, of course it should be dismissed. We generally say that pro se litigants should have at least one opportunity to amend before their complaint is dismissed with prejudice, unless it's clear that it would be futile to do so. I'm not sure it is here. To me, it does seem clear that the amendment will be futile because he can't show that he presented it to the prison officials before October 21st. I mean, there's nothing... I mean, when you're looking at what their amendment... This is Beverly Martin. You say futility, but the district court never made any finding to that effect as to futility, right? That is correct, Your Honor, because again, the district court was not operating under the assumption that the prison mailbox rule applies. But again, what they're asking on appeal now is to say this should go back to the court for an opportunity to amend his complaint to assert additional equitable tolling facts that he didn't allege in his first complaint, to argue equitable tolling, which he didn't argue  to assert that his claim is timely under the prison mailbox rule, which is another argument he didn't make below. And this, to me, seems a bridge too far even for a pro se litigant, and it's completely unfair to the district court because you're going back to tell the district court, you erred in dismissing this complaint based on all of these things that were never before you to consider in the first instance. And except finally... Really, isn't the problem, though... I don't think it would have been a problem for the district court to have dismissed the complaint if the district court had given an opportunity to amend, and we were in the same posture that we're in now. Then I don't think it would be a problem. But here, there was no opportunity to amend, so how do we know that this would be futile, especially when the district court made no such findings? Because as a matter of law, prison lockdown cannot be an extraordinary circumstance, especially one that only lasts... Let me ask you about that. The two cases that discuss that issue both arose in a different context. Those cases arose in the context of a motion to vacate as opposed to a motion to dismiss, which is extremely different. And neither one of them said there was a per se rule. They sort of hinted that maybe there might be, but they did not go so far as to say that. And instead, they applied the circumstances in those particular cases to find that equitable tolling was not appropriate. So unless there's a case you're relying on, maybe I've missed, and I'll give you an opportunity to say so. I don't think it's the case at all that we have said that there is a per se rule that you can never have equitable tolling in a lockdown situation. Your Honor is correct that that's not a per se rule, but the court has also recognized that the extraordinary circumstances have to persist throughout the entire lockdown period. And there have been cases where they've said that a short prison lockdown isn't an extraordinary circumstance because it doesn't encompass the... It only encompasses 11 months of a one-year statute of limitations period. Here we have a two-year statute of limitations period, and this only encompasses eight days of it. And so... It's under the... I'm sorry. Were those not in the context of a motion to vacate as opposed to a motion to dismiss? I'm okay. Well, I mean, this is a complaint. This was a motion to vacate our claims to be defined, which are considered civil complaints. So I'm not sure that I understand why that distinction would make a difference. I mean, it's still a statute of limitations period, and the same principles of equitable tolling would apply. Okay, but even so, in a motion to dismiss, we look at the allegations in the late most favorable to the non-moving parties, and we don't even know completely what the allegations were here. And since we don't have a per se rule about lockdowns, there might be a circumstance that we're not aware of that we need to take into account. I mean, the whole problem to me is the fact that there's... there was no opportunity to amend that was given. Maybe you want to focus on why that's not a problem, because maybe it's not a problem, but it seems to me that it is. I mean, again, all I can say about that is that it was... it's so clear from the face of the complaint that there's no basis for equitable tolling. Even if he were entitled to be equitable tolling for the period of the lockdown, if that was only eight days, he needs at least 13 days of equitable tolling to make his claim timely, even if the prison mailbox rule applied. So I would like to bring... But again, that assumes that October 21st is the date he gave the claim to the prison, and we don't know that. I mean, we do not know when he did, because it's an affirmative defense, the statute of limitations, and there was no obligation on his part to plead it in the complaint. But if he pleads facts that show that his complaint is time-barred, then that issue can be decided on the face of the complaint. And he pled here, he included a memorandum that said this hasn't... that the prison was on lockdown until October 21st, and so that... he couldn't have included that if he gave it to prison officials before October 21st. Ms. Gershow, this is Beverly Martin. You don't dispute that we have a general rule that allows pro se plaintiffs at least one opportunity to amend their complaint. I do not, Your Honor. Okay. But you say it doesn't apply here because... why? I mean, because he would have to amend too much? Or, I mean, it's not fair to the district court, I think you said? I just... I want to understand exactly your reasons why we should award him that opportunity that, you know, the rules of this court allow pro se plaintiffs. I think... several reasons. You know, as I stated, I just don't think there is a way to fix this through amendment based on what is complained in the complaint and the documents that are attached to it. Two, he had an opportunity to respond to the United States motion to dismiss it, said this isn't timely, and he never responded and said, oh, but wait, I did these things or I'd like a chance to amend or anything. So, the decision about lead to amend is abuse in the context of the lens of abuse of discretion and it's hard for me to see how on the face of this complaint and the procedural posture that the district court abused its discretion in saying this case is not going anywhere, there's no way to fix it, and I'm dismissing it with prejudice. The district court didn't say there's no way to fix it. The district court didn't make any findings on futility. Well, I mean, the district court noted in its standard of review that motions to dismiss a pro se, that when you dismiss a motion, that when you grant a motion to dismiss of a pro se plaintiff's litigation, you are treading on treacherous ground. So, he's aware of the standards and dismissed it. Do you agree with me? He didn't make any affirmative findings regarding futility. I agree with that, Your Honor. If I could briefly address why the prison mailbox rule doesn't apply here. Here, the agency has defined what it means for something to be presented, and that's when it receives it. So, what counsel is asking here is for this court to rewrite the procedural rule that was promulgated by the Department of Justice pursuant to its legislative authority. And, the court under the Doctrines of Sovereign Immunity and under FECTS are not allowed to do that. As the Ninth Circuit stated, we cannot, in the name of sympathy, rewrite a clear procedural rule. That constructs that Houston policies cannot override the plain meaning of a procedural rule, and that is what they are asking this court to do here. So, for all of those reasons, I would say that this case is like the Ecommendia case where the court declined to consider the mailbox rule because the plaintiff had not committed his claim until after the deadline and had not met his burden of showing that the circumstances were extraordinary enough to warrant equitable tolling. And, I would ask that the court affirm. Can you address a Bivens claim? Certainly, Your Honor. A Bivens claim based on grossly inadequate care requires, under this course, President Campbell v. Sykes, for the plaintiff to allege that the defendant was aware that the care was grossly inadequate and proceeded with that course of treatment anyway. Mr. Riddick did not allege that and that is not a plausible inference from the allegations of the complaints that were made. On that point, Ms. Grishel, the district court really didn't apply the right standards. He just recited the standard the way I say it is. It's enough that the official acted or failed to act despite knowledge of a substantial risk of harm. And what the district court seemed to require was that Newland had a subjective intent to harm him. And that's the wrong standard, is it not? And that standard comes from the language of the district court. The district court said that deliberate indifference equates to a subjective intent to harm. So while his language is not precise, I think the district court got it correct that this was a claim of medical malpractice and not a claim that Dr. Newland knew that this was going to cause him to suffer a third degree burn and proceed with it anyway. Again, you know, this case goes back. It's not your position, is it, that Mr. Riddick has to prove that Newland had a subjective intent to harm him, is it? No, but he has to have acted with at least a criminally reckless state of mind. So he had to have been aware of the risk and acted unjustifiably in his conduct and awareness of that risk. Although the doctor did say, you know, who butchered you like this? And when Riddick told the doctor what was he doing using this, he shouldn't be doing now? That's not the exact allegation. The allegation is that he said who did this? They said Dr. Newland. He said there's no Dr. Newland at Coleman. He said he's a physician's assistant. A physician's assistant has no business using this. And what we know from the documents that are in the complaint. But isn't the point there that as a physician's assistant, he shouldn't be doing it? And a fair, I mean, again, since it's on the motion to dismiss stage, we have to take all of the reasonable inferences in favor of the notion that Newland was a physician's assistant and he knew he shouldn't have been doing this. Why would that not be reasonable and fair inferences? It might not be proven later, I grant you that, but on the basis of how we look at a motion to dismiss, why aren't those fair inferences? Because you don't have to accept an inference that's directly contradicted by documents that are attached to the complaint and the medical records that are attached to the complaint show that he was treated by a Dr. Newland. So you have to, for purposes of this, accept that he is a doctor and that, therefore, the ER doctor who was treating Riddick and made those statements was wrongly informed about who Dr. Newland was and by thinking that he was a physician's assistant and paying a physician's assistant isn't qualified, that is not enough to say that Dr. Newland both was unqualified and also that he knew that he was unqualified and that that would result in a third degree burn to Mr. Riddick, which is what is necessary to plead to state a delivered indifference claim. And when you look at the course of conduct that happened here, they went from conservatively treating his wound with pressure and bandaging, then Dr. Newland gave him lidocaine to numb the pain and tried to stop the bleeding with a cotterization pen and when that didn't work, sent him to the hospital for treatment for sutures. And when you look at a course of treatment, the doctor was not deliberately indifferent to his medical need of the bleeding ankle. He made sure that his ankle was treated within the same day. And so the only thing you can look at is, well, what about the fact that he was burned? And that alone is not enough to state a delivered indifference claim. We see delivered indifference claims all the time with very tragic outcomes where they're ultimately unsuccessful because the fact that he was burned alone cannot support a claim for delivered indifference without some allegation. And the allegations just do not support a possible inference that Dr. Nolan was actually aware. Not that he should have been aware, but was actually aware of the risk of harm in this. There is an allegation, though, that the doctor treated him dead. Who butchered you like this? Isn't that true? That is true. But I don't think that that supports any more of an inference that he was asked that anything more than medical negligence, medical malpractice. It just doesn't show that Dr. Nolan was aware of the risk that he was going to butcher his leg when he used the cotterization pen, which is a BOP approved method of treating a bleed. I don't know. This is Beverly Morgan. If somebody is about to burn my leg to cotterize a bleeding wound, I would want them to know that there was a risk of harm, significant risk of harm. Again, that might state a claim of negligence, but it doesn't say whether or not we would want the doctor to be aware. Perhaps that's a problem with BOP policy, but that's not an allegation that the doctor knew that it was going to cause this third-degree burn. He needs to know that there's a substantial risk of harm. That's the standard. Correct. These allegations don't go at all to what he subjectively was aware of. All the more reasons. I mean, I think if, you know, they say all these things that we said you can't, that they didn't allege, and they said, well, then we should get to allege them, but you have to have a good safe basis for believing that that's what the facts are going to show. Based on the course of conduct here, why would the doctor give him lidocaine and attempt to stop it with a cotization pen and then send him to the hospital if he didn't think this was going to work? Why not send him to the hospital? This to me does not seem like something that rises to the level of a constitutional violation or something that could ever, no matter how artfully worded, state a claim of anything other than a negligence claim. And I see I've way exceeded my time, so unless this Court has any further questions, I would ask that it affirm the District Court. Thank you, Ms. Gerschel. Thank you. May it please the Court, this is Mr. Rinnick.  that Mr. Rinnick as a pro se prisoner litigant alleged a deliberate indifference claim, that the doctor at the hospital immediately reacted by saying that Newland has no business using it and that the prison should do themselves a favor and keep that laser out of Newland's hands. We think that's enough, but if it's not enough, it's very clear that Mr. Rinnick was entitled to at least one chance to amend before dismissal of prejudice. I heard no reason why that rule wouldn't apply here as it does in all cases. Instead, I heard a lot of speculation about disputed facts or at least in the context of an amended complaint. As to the issue of equitable polling, there is no per se rule that a prison lockout does not qualify as equitable polling. The court was correct about that. In Missoula versus United States, this court held that equitable polling was a fact-specific inquiry and must be termed on a case-by-case basis. In particular, if Mr. Rinnick had been given an opportunity to amend, the district judge would have heard more lockdown periods than the one lockdown period described in the notice. There were multiple lockdown periods throughout the time of limitations. Is it true that the claim was actually dated in July of 2015? What's your explanation for the fact that it wasn't tendered earlier than October? Judge Thomas, to answer your question, that is correct. That is the date on it. I don't think that suggests anything untoward, improper, and I can't provide the reason for you right now, but I don't think that suggests anything about when he provided it to prison staff. We also heard the government erect another barrier to review talking about how this wasn't raised below and how plain error review should apply. Plain error review is not jurisdictional. The panel can take up these issues in its discretion, particularly where there's a miscarriage of justice, which is  miscarriage of justice. There was no amendment, no council not taking up this issue, or it would be a miscarriage of justice. Finally, as it relates to the plain error review doctrine, in 1993 this court decided to guard the appeal. It was a question of first impression. But what judge birth also made clear in footnote 10 and the surrounding text was that the appellant did not raise the prison mailbox rule in the district court there either. He didn't argue the prison mailbox rule below. The 11th circuit understood that plain error review did not apply. The 11th circuit went on to hold in what looked like a fairly easy decision that the prison mailbox rule applied in that context too. The fairness concerns apply with full force here. Those concerns don't disappear merely because Mr. Riddick's envelope contained an administrative claim form instead of an FTCA complaint. Thank you. Thank you, Mr. Parente. We've got your case.